MARVIN E. JEWELL & COMPANY, A PARTNERSHIP, APPELLANT, V. DALE A. THOMAS, APPELLEE.

434 N.W.2d 532

Filed January 27, 1989. No. 87-028.

Rodney M. Confer, of Knudsen, Berkheimer, Richardson & Endacott, for appellant.

James M. Bausch and David A. Barron, of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Plaintiff-appellant, Marvin E. Jewell & Company (Jewell), a partnership, filed this action against defendant-appellee, Dale A. Thomas, seeking damages of $141,000 plus interest, representing payments made by Jewell to the Union Bank and Trust Company (Union Bank) in paying off a promissory note. Jewell alleged that it paid the note only after Thomas did not pay it when due and that Thomas, as a party accommodated, owed the amount of the note to Jewell.

Thomas, in his amended answer, denied he was a "party accommodated" and alleged that any amount paid by Jewell to Union Bank was in payment of an amount owing to Union Bank by Jewell. Thomas counterclaimed against Jewell, seeking an accounting. Trial on the petition seeking damages in a law action was held separate from the counterclaim action, which sought the equitable remedy of accounting.

After trial on the petition, the district court entered its order setting out detailed findings of fact and conclusions of law and dismissing Jewell's petition. After a motion for new trial was denied, Jewell timely appealed. In this court, appellant sets out five assignments of error, alleging that the trial court erred in (1) holding that Jewell had not signed the note for the purpose of lending its name to Thomas; (2) holding that Jewell was not an accommodation party because Jewell was identified as the maker on the face of the note; (3) requiring Jewell to prove that Union Bank would not have renewed Thomas' indebtedness unless Jewell was a party to the note; (4) holding that Jewell was not an accommodation party because Union Bank considered Jewell to be the debtor; and (5) holding that Jewell was not an accommodation party because it paid the note without first requiring that Thomas default on the note and that the bank proceed against Thomas. We affirm.

The record shows the following. In 1963, Marvin E. Jewell formed a business known as Marvin E. Jewell & Company. In 1965, the business became a partnership with two other certified public accountants. In 1969, Thomas joined the firm as an employee and became a partner holding 10 percent of the partnership's equity capital, effective January 1, 1977. Because Marvin Jewell was negotiating a settlement with an ex-partner, Thomas did not actually purchase his interest until sometime in the spring of 1978.

In order to purchase his 10-percent interest in Jewell, Thomas borrowed $90,000 from Union Bank in May of 1978. At that time, Thomas had an outstanding home improvement loan with Union Bank for $25,000. Thomas borrowed $115,000 from Union Bank: $90,000 went to the purchase of his Jewell partnership interest, and the balance renewed his personal home improvement loan.

Marvin Jewell and Dennis Baumert shared $81,344 of the $90,000 Thomas borrowed from Union Bank, and the remaining $8,656 was used to fund Thomas' partnership capital account. After Thomas' purchase into the partnership, Marvin Jewell held 51 percent, Baumert held 39 percent, and Thomas held 10 percent.

Between May 12, 1978, and August 17, 1981, Thomas executed a number of new and renewal notes with Union Bank in connection with the $115,000 loan. During this period, Thomas paid approximately $50,000 toward the principal on these notes and over $60,000 in interest payments. By August 17, 1981, Thomas was paying Union Bank 19.5 percent interest on his note to Union Bank.

In November of 1981, Union Bank wrote Thomas and indicated a desire to discuss Thomas' obligations to the bank. The executive vice president of Union Bank testified that he suggested to Thomas that he might "have the partnership assume a . . . large portion of his indebtedness and that the repayment source for that would come from amounts due him from the partnership in the profit sharing arrangement they had as partners."

Thomas testified that he approached Marvin Jewell and requested that the partnership capital accounts be equalized. Thomas testified that this would have required Marvin Jewell to have paid approximately $40,000 into the partnership capital account. Marvin Jewell testified that Thomas told him that he (Thomas) was having trouble "with a number of his obligations" with Union Bank. Marvin Jewell testified that he agreed to look into whether the partners would be willing to "guarantee" Thomas' obligation with Union Bank.

Sometime later, Thomas brought a promissory note in the amount of $145,000 to Marvin Jewell. This note designated Union Bank as the payee and Jewell as the debtor. The note had a signature line for Thomas, on which Thomas had already signed, and three signature lines for the remaining partners. Beside these lines was the phrase, "Partner/Personally." Each of the remaining partners executed the note, and the note was delivered to Union Bank. The proceeds were used by Thomas to pay off his personal obligations with Union Bank.

The other Jewell partners, Marvin Jewell, Baumert, and Ronald Culwell, testified that it was their understanding that Thomas would still be required to make payments on the note. Thomas testified that it was his understanding that payments on the note would be taken from his portion of partnership profits. A representative of Union Bank testified that it was his understanding that the note was an obligation of Jewell, and not of Thomas.

On December 1, 1982, the $145,000 note with Union Bank was renewed. In view of the result reached in this case, we need not determine the question, raised by Thomas, as to whether the renewal of the note constituted such payment of the note as to enable Jewell to seek recourse against Thomas under Neb. U.C.C. § 3-415(5) (Reissue 1980). The new note also listed the debtor as Jewell, and Marvin Jewell was the sole signatory. On December 21, 1982, Thomas resigned from the partnership without prior notice.

In May of 1983, Marvin Jewell sent a letter to Thomas advising Thomas that he was "liable for a note" at Union Bank. On June 2, 1983, Jewell made another interest payment to Union Bank. This time the check bore a notation "Int DT Note." This notation had not appeared on any of the payments Jewell had made on the obligation before Thomas left the partnership.

Our law setting out the review of a law action tried to the court is settled. The factual findings of a trial court in a law action tried without a jury have the effect of findings of a jury and will not be set aside unless they are clearly wrong. *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 406 N.W.2d 640 (1987). However, in reviewing questions of law, the Supreme Court has an obligation to reach its conclusions independent from conclusions reached by the trial court. *Pallas v. Black*, 226 Neb. 728, 414 N.W.2d 805 (1987); *Washington Heights Co. v. Frazier*, 226 Neb. 127, 409 N.W.2d 612 (1987).

Jewell's claim against Thomas is based entirely on § 3-415, which provides in relevant part as follows:

> (1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

. . . .

(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party.

An accommodation party is a surety, and by lending its name to the maker of the note, in a sense, guarantees that in the event of default by the principal obligor, the accommodation party will be liable. We recognize that the obligation of an accommodation party to the payee is determined by the capacity in which the accommodation party signs the instrument.

We are concerned in this case with the relationship between Jewell and Thomas, and that relationship is not determined by the capacity in which Jewell signed the note. The intent of the parties is determinative of whether a party is an accommodation maker or the principal obligor of an instrument. *Holcomb State Bank v. Adamson*, 107 Ill. App. 3d 908, 438 N.E.2d 635 (1982); *Kerney v. Kerney*, 120 R.I. 209, 386 A.2d 1100 (1978). In this case, the promissory note shows on its face that each partner signed as a comaker, both personally and on behalf of the partnership. Both Thomas and a representative of Union Bank testified that it was their understanding that the note was an obligation of Jewell, and not that of Thomas. Additionally, all correspondence concerning the note was sent by Union Bank to the partnership. The trial court was not clearly wrong in holding that Jewell was not an accommodation party.

Jewell had the burden of establishing that an understanding existed between Jewell and Thomas that the partnership would execute the note as an accommodation party. *Mary Riegler v. N. W. Riegler Jr.*, 244 Ark. 483, 426 S.W.2d 789 (1968); *MacArthur v. Cannon*, 4 Conn. Cir. 208, 229 A.2d 372 (1967). Jewell did not sustain its burden. While both Marvin Jewell and Baumert testified that the note was signed to reduce the day-to-day "pressures" on Thomas, Thomas testified the

note was comade by the partners in an effort to appease his desire to have the partnership capital accounts equalized. In determining the sufficiency of the evidence to support the judgment of the trial court, the evidence must be considered most favorably to the successful party, every controverted fact must be resolved in his favor, and he is entitled to the benefit of any inferences reasonably deducible from the evidence. *InterSystems, Inc. v. Farmers Co-op Exch.*, 225 Neb. 497, 406 N.W.2d 344 (1987); *Middagh v. Stanal Sound Ltd.*, 222 Neb. 54, 382 N.W.2d 303 (1986).

We are not convinced from the record that the trial court was clearly wrong in accepting Thomas' explanation of the intent of the parties over that of the remaining partners, nor can we say as a matter of law that the trial court erred in not holding that an intent to relieve the "pressure" from Thomas gave Jewell accommodation party status as to Thomas.

An express condition of accommodation party status is the signature of one "for the purpose of lending his name" to another. § 3-415(1). The critical question in determining whether someone intended to lend his name to another is whether the alleged accommodation party was required to sign the instrument to enable the alleged principal obligor to obtain credit. Several courts have stated that a major consideration in determining accommodation party status is the fact that the lender refused to make the loan unless the accommodation party was a party to the instrument. See *Farmers State Bank v. Cooper*, 227 Kan. 547, 608 P.2d 929 (1980). In this case, Union Bank and Thomas had an ongoing relationship. There was no demand by Union Bank that Jewell sign a note as a comaker as a condition of extending the loan to Thomas, and there is no evidence in the record that Jewell was required to lend its name to Thomas so that Thomas could maintain his credit with Union Bank.

Evidence of the effect of the transaction in question is also relevant to the issue of intent. The best, if not controlling, evidence of the intent of the parties to an agreement is the parties' interpretation of the agreement as evidenced by their actions in performance of the agreement. *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983); *DeFilipps v. Skinner*, 211

Neb. 801, 320 N.W.2d 737 (1982). Jewell did not exhibit the behavior of a surety. Instead of waiting for a default on the note by the person it claims to have accommodated, Jewell treated the note as its own obligation. After executing the note to Union Bank on December 1, 1981, Jewell took over complete responsibility for servicing the debt. Thomas never dealt with Union Bank again on the note. Thomas made no further payments on the note. The note was also reflected on the books of Jewell as an obligation of Jewell.

Appellant contends that the trial court erred in holding that "an accommodation party is not liable on the instrument until after its principal defaults." Brief for appellant at 29. We have reviewed the trial court's order and cannot find where it made such a specific holding. The trial court correctly stated the status of a party who signs a note is determined by the capacity in which he signs the instrument. The holding of the trial court on this issue is not determinative of the result herein reached.

We are unwilling to hold that Jewell was an accommodation party based on the evidence presented here for our review. We recognize that accommodation party status may be shown through parol evidence. § 3-415, comment 2; *Dalton v. George B. Hatley Co., Inc.*, 634 S.W.2d 374 (Tex. App. 1982). A party claiming accommodation party status, however, bears the burden of proving its right to such status. We have reviewed the record and are unable to say that the trial court was clearly wrong in holding that the facts did not support a finding that Jewell was an accommodation party on the note. Jewell executed the instrument as the maker, with each of its partners signing as individual guarantors for the partnership. Jewell did not establish that it was an accommodation party as to Thomas.

The judgment of the trial court is affirmed.

AFFIRMED.

HASTINGS, C.J., not participating.