LEROY BLITZKIE, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

491 N.W.2d 42

Filed October 23, 1992.    No. S-89-1175.

C.J. Gatz, of Jewell, Gatz, Collins, Dreier & Fitzgerald, and Lyle Joseph Koenig for appellant.

Robert M. Spire, Attorney General, and John R. Thompson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Plaintiff, LeRoy Blitzkie, appeals the action of the district court, which entered judgment in favor of the State of Nebraska in his suit for damages. In its memorandum order, the district court held that any warnings which plaintiff alleges the State failed to give as to the proximity of a pseudorabies outbreak would have been a discretionary act for which the State enjoys immunity under the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1981).

This is the third appearance of this case before the court. In *State v. Blitzkie*, 216 Neb. 105, 342 N.W.2d 5 (1983), we reversed a summary judgment in favor of the State because of the failure to give Blitzkie time to file counteraffidavits, and in *Blitzkie v. State*, 228 Neb. 409, 422 N.W.2d 773 (1988), we again set aside a summary judgment in favor of the State because of a waiver of jurisdictional defect by the State. This time, we affirm the judgment of the district court.

Plaintiff was a farmer who raised certified SPF (specific pathogen-free) hogs for breeding stock. In order to maintain certification, every 3 months plaintiff's veterinarian would test a different 25 percent of his stock for pseudorabies and brucellosis. In order to protect his herd from pseudorabies, it was necessary for plaintiff to issue boots and coveralls to anyone coming on the premises, followed by disinfecting of that clothing; to keep other animals and wildlife away from the hogs; to keep the buildings clean; and to avoid contact by outside trucks with his hog lots.

Around the first of April 1980, some of plaintiff's hogs became sick, and approximately April 9, some of plaintiff's hogs were diagnosed as having pseudorabies. A number of plaintiff's hogs died, including 10 "big sows" and about 500 young pigs.

Shortly after the outbreak of the disease in plaintiff's herd, the plaintiff learned of clinical diagnoses of pseudorabies in swine herds on several farms in Boyd County during the months of February and March. At that time, according to witness Dr. N.W. Kruse, the Nebraska Department of Agriculture had no statutory authority to eradicate pseudorabies, but did have authority and did, in the instances referred to, try to control the disease by quarantine. No general notice was given to the public of any outbreak of pseudorabies, but the State did have a practice of sending, every month between the first and the fifth, a list of all current pseudorabies-quarantined herds to all veterinarians practicing in the State of Nebraska, which included the plaintiff's two veterinarians.

The Nebraska Department of Agriculture is granted certain powers and duties by Neb. Rev. Stat. § 54-701 (Reissue 1988) as follows:

> The Department of Agriculture shall be vested with the power and charged with the duties of protecting the health of livestock in Nebraska, of determining and employing the most efficient and practical means for the prevention, suppression, control and eradication of dangerous, infectious, contagious or otherwise transmissible diseases among domestic animals, and, to that end, of placing in quarantine any county or part of any county, or any private premises, or private or public stockyards, and of quarantining any domestic animal or animals infected with such disease, or which have been, or are suspected of having been, exposed to infection therefrom, and of killing any animal so infected, and of regulating or prohibiting the arrival into and departure from and movement within the state of animals infected with such disease or exposed or suspected of having been exposed, to the cause, infection or contagion therefrom, and at the

cost of the owner, of detaining any domestic animal found in violation of any departmental or statutory regulation or prohibition and to promulgate, adopt and enforce such reasonable rules and regulations as may be . . . proper . . . .

Plaintiff's petition filed against the State of Nebraska alleged knowledge on the part of the State of the outbreak of pseudorabies, the negligent failure of the State to notify the general public, and that as a proximate result of that negligence the plaintiff suffered loss of his property.

Plaintiff assigns as error the findings of the trial court that the State of Nebraska was immune from liability by reason of the discretionary function exception contained in the State Tort Claims Act, the finding that the Department of Agriculture had no duty to notify plaintiff of the outbreak of pseudorabies, the finding that the State's failure to notify plaintiff was not a proximate cause of plaintiff's loss, and the finding that plaintiff had failed to prove with reasonable certainty the amount of his damages. Because we agree with the district court that the duties imposed upon the State of Nebraska were discretionary duties and therefore not the basis for liability on the part of the State, we discuss only the first assignment of error, and we affirm.

On appeal to an appellate court under the State Tort Claims Act, the findings of the trial court will not be disturbed unless clearly wrong. *Kumar v. Douglas County*, 234 Neb. 511, 452 N.W.2d 21 (1990).

Whether the allegations made by a plaintiff constitute a cause of action under the State Tort Claims Act or whether the allegations set forth claims which are precluded by the discretionary function or misrepresentation exemptions are questions of law. Accordingly, an appellate court has an obligation to reach its conclusions on these questions independent from the conclusions reached by the trial court. *Marvin E. Jewell & Co. v. Thomas*, 231 Neb. 1, 434 N.W.2d 532 (1989).

The Legislature specifically exempted from the State Tort Claims Act

[a]ny claim based upon an act or omission of an employee of the state, exercising due care, in the execution of a

statute or regulation, whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty* on the part of a state agency or an employee of the state, whether or not the discretion be abused.

(Emphasis supplied.) § 81-8,219(1)(a). As we have previously held, the discretionary function or duty exemption in the State Tort Claims Act extends only to the basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions. See *Wickersham v. State*, 218 Neb. 175, 354 N.W.2d 134 (1984).

The very letter of § 54-701 implies that the Department of Agriculture has the discretion of "employing the most efficient and practical means" in the control and prevention of livestock disease. The evidence is uncontroverted that the Department of Agriculture did quarantine the affected animals, in compliance with the statute, and in its discretion, notified the state's veterinarians by way of newsletter. The method of notice and to whom the notice would be sent were completely discretionary functions, and plaintiff's claims that these activities were ministerial, rather than discretionary, are without merit.

As recently as *First Nat. Bank of Omaha v. State, ante* p. 267, 488 N.W.2d 343 (1992), we were faced with a remarkably similar question in principle. In that case, the Nebraska Department of Banking encouraged First National Bank of Omaha not to sell stock in Security Bank and Trust Company of Beatrice and First Security Savings of Beatrice, which stock it held as collateral on some loans, but, rather, encouraged First National to take over both of those institutions. First National rejected that proposal and sent potential buyers notice that the stock would be sold.

In the meantime, the department received written notice from the Federal Bureau of Investigation in regard to apparent fraudulent dealings involving Security Bank. At no time did the department make First National aware of that information.

Nevertheless, and shortly thereafter, a meeting was held with representatives of First National, the department, and others, at which meeting the director of the department proposed that

First National acquire the stock of Security Bank and Security Savings. Such an agreement was reached with apparently disastrous results to First National.

The basis of First National's suit against the State of Nebraska was that the department, by fostering and approving the agreement, undertook a self-imposed duty to act with due care, but instead acted negligently, to First National's detriment.

In rejecting that argument, this court stated, "We specifically found that while Neb. Rev. Stat. § 8-102 (Reissue 1991) and § 8-401 empower the department to supervise and control banks and industrial loan and investment companies, 'none of the statutes . . . requires the [d]epartment to execute any of its authorized powers.' " *First Nat. Bank of Omaha v. State, ante* at 273, 488 N.W.2d at 347, citing *Security Inv. Co. v. State*, 231 Neb. 536, 437 N.W.2d 439 (1989).

The court in *First Nat. Bank of Omaha v. State, ante* at 275, 488 N.W.2d at 348, quoting *U.S. v. Gaubert*, 499 U.S. 315, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991), stated the following:

> "Day-to-day management of banking affairs, like the management of other businesses, regularly require [sic] judgment as to which of a range of permissible courses is the wisest. Discretionary conduct is not confined to the policy or planning level. '[I]t is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case.' *Varig Airlines, supra*, at 813, 104 S.Ct., at 2764." 111 S. Ct. at 1275. Thus, the *Gaubert* Court concluded operational level decisions . . . are not necessarily outside the discretionary function exemption. We agree.

In the present case, the Department of Agriculture was charged with "employing the most efficient and practical means for the prevention, suppression, control and eradication of dangerous, infectious, contagious or otherwise transmissible diseases among domestic animals, and, to that end, of placing in quarantine any county or part of any county . . . and of quarantining any domestic animal . . . ." § 54-701. In quarantining herds, the Department of Agriculture followed

those requirements to the letter and exercised its discretion as to its other actions, which it was authorized and obligated to do.

This case comes within the discretionary function exemption of the State Tort Claims Act, and the judgment of the district court is affirmed.

AFFIRMED.