PATRICIA HAMMOND, APPELLEE, v. NEMAHA COUNTY, NEBRASKA, A POLITICAL SUBDIVISION OF THE STATE OF NEBRASKA, AND STATE OF NEBRASKA, APPELLANTS.

Filed March 12, 1998. No. A-96-710.

This opinion has been ordered permanently published by order of the Court of Appeals dated June 2, 1998.

581 N.W. 2d 82

Don Stenberg, Attorney General, and John R. Thompson, for appellant State.

Michael N. Dolich, of Friedman Law Offices, for appellee.

HANNON, IRWIN, and MUES, Judges.

IRWIN, Judge.

## I. INTRODUCTION

On September 2, 1992, Patricia Hammond was injured in a motorcycle accident on a detour on U.S. Highway 136 in Nemaha County. As a result, Hammond brought a negligence action in the district court for Nemaha County against the State and Nemaha County pursuant to the State Tort Claims Act, Neb. Rev. Stat. § 81-8,209 et seq. (Reissue 1987 & Cum. Supp. 1992), and the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1991 & Cum. Supp. 1992), respectively. It appears that at some point, Nemaha County was dismissed from the lawsuit, and it is not involved in this appeal.

In her petition, Hammond generally contended that Nemaha County and the State of Nebraska (defendants) were negligent in failing to properly maintain and inspect the road, failing to

warn her that the surface was treacherous and slippery, and failing to select an all-weather road for the detour. Following a bench trial, the district judge concluded that the State had been negligent in failing to warn Hammond of the dangerously slippery condition of the road. The district judge awarded damages to Hammond and against the State in the amount of $150,000. Thereafter, the State timely perfected the present appeal.

## II. FACTUAL BACKGROUND

In the summer of 1992, Hammond and her husband, Wayne, were traveling on a Honda Gold Wing motorcycle with a two-wheeled trailer hitched behind. They were traveling around the United States on an extended honeymoon. Throughout their travels, Wayne drove the motorcycle. The record reveals that Wayne has extensive experience driving motorcycles and traveling on motorcycles across the country.

On the evening of September 1, 1992, the Hammonds stopped in Tecumseh. That evening, it rained approximately 2 inches. On the morning of September 2, the Hammonds proceeded east on Highway 136 toward Auburn. Approximately 2½ miles west of Auburn, they encountered a detour due to construction work on a bridge on the highway. Detour signs directed them north on a gravel road. There was no other signage on the road regarding the detour.

When the Hammonds proceeded north on the gravel road, they observed that the road was muddy and slippery. Because Wayne was concerned about the condition of the road, he used his citizens band radio to speak with a truckdriver on the road ahead of them. The truckdriver told Wayne that the gravel detour road continued for 2½ miles and that it was "slick." Although there were several farm driveways along the road, the Hammonds continued on. Wayne lost control of the motorcycle, and it tipped over on its side, breaking Patricia's leg. Additional facts necessary for the resolution of this appeal will be set forth in the relevant sections of the analysis.

## III. ASSIGNMENTS OF ERROR

For the State's assigned errors, it contends that the district court erred in concluding that (1) the State was not immune from suit, (2) the State had a duty to warn of the slippery con-

dition of the road, and (3) the State's failure to warn was the sole proximate cause of the accident.

## IV. STANDARD OF REVIEW

The relevant standards of review will be set forth in the applicable sections of the analysis.

## V. ANALYSIS

### 1. SOVEREIGN IMMUNITY

We first address whether the State has waived its sovereign immunity. Because the district court concluded that the State was negligent in failing to warn of the slippery condition of the road, we restrict our analysis to the same. In support of the State's assigned error, it argues that under the State Tort Claims Act, it is exempt from suit. Section 81-8,219 sets forth specific claims for which the State's immunity is reserved. The State argues that subsections 10 and 12 of § 81-8,219 apply in the present case.

Whether the allegations made by a plaintiff constitute a cause of action under the State Tort Claims Act or whether the allegations set forth claims which are precluded by the exemptions set forth in the act are questions of law. *Blitzkie v. State*, 241 Neb. 759, 491 N.W.2d 42 (1992); *Marvin E. Jewell & Co. v. Thomas*, 231 Neb. 1, 434 N.W.2d 532 (1989). An appellate court has an obligation to reach its conclusions on these questions independent from the conclusions reached by the trial court. *Blitzkie, supra*; *Marvin E. Jewell & Co., supra.*

The State Tort Claims Act generally provides that the state is liable for torts in the same manner and to the same extent as a private individual. § 81-8,215. However, § 81-8,219 sets forth particular claims for which the state has not waived its immunity. We note that § 81-8,219 was amended February 7, 1992, subject to an emergency clause. As a result, the amended statute was in effect on the date of the Hammonds' accident, September 2, 1992. The relevant portions of § 81-8,219 provide:

The State Tort Claims Act shall not apply to:

. . . .

(10) Any claim arising out of snow or ice conditions or other temporary conditions caused by nature on any high-

way as defined in section 39-602 [now codified at Neb. Rev. Stat. § 60-624 (Reissue 1993)], bridge, public thoroughfare, or other state-owned public place due to weather conditions. Nothing in this subdivision shall be construed to limit the state's liability for any claim arising out of the operation of a motor vehicle by an employee of the state while acting within the course and scope of his or her employment by the state;

. . . .

(12) Any claim arising out of the alleged insufficiency or want of repair of any highway as defined in section 39-602, bridge, or other public thoroughfare. Insufficiency or want of repair shall be construed to refer to the general or overall condition and shall not refer to a spot or localized defect. The state shall be deemed to waive its immunity for a claim due to a spot or localized defect only if the state has had actual or constructive notice of the defect within a reasonable time to allow repair prior to the incident giving rise to the claim.

■ Although Neb. Const. art. V, § 22, provides that "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought," the provision is not self-executing. Rather, it requires legislative action for a waiver of a state's sovereign immunity. *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994); *Riley v. State*, 244 Neb. 250, 506 N.W.2d 45 (1993).

■ A statute authorizing an action against the state is strictly construed because the statute is in derogation of the state's sovereign immunity. *Hoiengs, supra*; *Riley, supra*. Waiver of sovereign immunity will be found only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction. *Hoiengs, supra* (citing *Wiseman v. Keller*, 218 Neb. 717, 358 N.W.2d 768 (1984)). Statutes purporting to waive the state's sovereign immunity must be clear in their intent and must be strictly construed in favor of the sovereign and against a waiver. *Wiseman, supra*; *Catania v. The University of Nebraska*, 204 Neb. 304, 282 N.W.2d 27 (1979), *overruled on other grounds, Blitzkie, supra.*

In subsection 10 of § 81-8,219, the Legislature chose to exempt from suit all claims against the state "arising out of" conditions on the highway caused by nature or due to weather conditions. "Arise" has been defined as "[t]o spring up, originate, to come into being . . . ." Black's Law Dictionary 108 (6th ed. 1990). When interpreting the phrase "arising out of the use" in an insurance contract, the Nebraska Supreme Court held that such words are very broad, general, and comprehensive terms, and are ordinarily understood to mean originating from, growing out of, or flowing from. *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966). The court cited with approval the following language of the Pennsylvania Supreme Court: " '[A]rising out of' means causally connected with, not proximately caused by, and that a 'but for' causation, that is, a cause and result relationship, is enough to satisfy this provision of the policy." 179 Neb. at 649, 139 N.W.2d at 827 (citing *Mfrs. Cas. Ins. Co. v. Goodville M. Cas. Co.*, 403 Pa. 603, 170 A.2d 571 (1961)).

Narrowly construing subsection 10 of § 81-8,219 in favor of the State, we conclude that the State has not waived its immunity for failure-to-warn claims such as that before us. Clearly, a claim that the State failed to warn of a condition of the road resulting from rain "arises out of" a condition of the road due to weather conditions as meant by subsection 10. While other factors may have contributed to the situation which resulted in a muddy, slippery road, but for the rain, there would have been no condition of the road of which to warn. There is a causal relationship between the rain and Hammond's claim that the State failed to warn her of the condition of the road.

For these reasons, we conclude that the State has not waived its immunity in regard to Hammond's claim due to the exemption in § 81-8,219(10). The district court erred in concluding to the contrary. Because we conclude the State is exempt from suit pursuant to subsection 10, we need not determine whether it would also be exempt from suit pursuant to § 81-8,219(12). This is so because subsection 12 provides that the state's immunity regarding the "want of repair of any highway" is waived only if it relates to a localized defect of which the state had knowledge within reasonable time to repair. Even were we to

conclude that this case dealt with such a localized defect, the State would still not be deemed to have waived its immunity in this case because the spot arose out of, at least in part, a "temporary condition caused by nature," i.e., the rain, and therefore, subsection 10 dictates that the state does not waive its immunity when weather is a contributing factor creating the condition on the highway.

## 2. DUTY TO WARN

Even were we to conclude that sovereign immunity was waived by the State, we would still arrive at the same result because in this case the State was not the proximate cause of Hammond's injury and damages. In the interest of a full and thorough discussion, we will explain.

 To recover under the State Tort Claims Act, a claimant must prove the four basic elements of negligence, namely, duty, breach of duty, proximate causation, and damages. *Scholl v. County of Boone*, 250 Neb. 283, 549 N.W.2d 144 (1996); *Hill v. City of Lincoln*, 249 Neb. 88, 541 N.W.2d 655 (1996). The question of whether a legal duty exists for actionable negligence is a question of law dependent upon the facts in a particular situation. *Whalen v. U S West Communications*, 253 Neb. 334, 570 N.W.2d 531 (1997); *Olson v. SID No. 177*, 251 Neb. 380, 557 N.W.2d 651 (1997).

 The state's duty to warn is not absolute. Generally, it is the duty of the state to use reasonable and ordinary care in the construction, maintenance, and repair of its highways and bridges so that they will be reasonably safe for the traveler using them while in the exercise of reasonable and ordinary care and prudence. *Shepard v. State of Nebraska*, 214 Neb. 744, 336 N.W.2d 85 (1983). Regarding the state's duty to warn, the Nebraska Supreme Court has held that

> when (1) a governmental entity has actual or constructive notice of a dangerous condition or hazard caused by or under the control of the governmental entity and (2) the dangerous condition or hazard *is not readily apparent* to persons who are likely to be injured by the dangerous condition or hazard, the governmental entity has a nondiscretionary duty to warn of the danger or take other protective

measures that may prevent injury as the result of the dangerous condition or hazard.

(Emphasis supplied.) *Lemke v. Metropolitan Utilities Dist.*, 243 Neb. 633, 647, 502 N.W.2d 80, 89 (1993). To restate, the state has a duty only to warn of dangerous conditions or hazards which are not readily apparent to persons likely to be injured by them.

The Nebraska Supreme Court has also stated that

[t]he duty to warn others of a particular peril is not absolute; the need to warn depends upon, among other things, the age, intelligence, and information of those to whom the warning might be due, and the obligation disappears entirely when it is shown that the injured person did in fact know of and fully appreciate the peril.

*Tiede v. Loup Power Dist.*, 226 Neb. 295, 300, 411 N.W.2d 312, 316 (1987). See, also, *Hirschman v. Maddox*, 223 Neb. 302, 389 N.W.2d 297 (1986).

The court's holding in *Hume v. Otoe County*, 212 Neb. 616, 324 N.W.2d 810 (1982), is illustrative of the above principles. In holding that there was sufficient evidence to sustain a finding that the county used ordinary care in the maintenance of a highway on which the plaintiff was injured in an accident on an icy road, the *Hume* court stated: "The fact that the surface of the road was partially covered with ice or packed snow was open and apparent, and there is no requirement that signs be posted to warn of such conditions." *Id.* at 619, 324 N.W.2d at 812.

In the case before us, we note that there is no dispute that the State had not placed any warnings on or near the detour that the road was slippery. We have a driver of a motorcycle with extensive experience driving motorcycles on long treks across the United States. Wayne testified that he had logged thousands of hours on motorcycles and had taken extensive safety courses. The testimony of the Hammonds also established the following: They were aware of the rainfall the evening before and that the detour was a gravel road. In addition, they were aware that the road was muddy and slippery. Furthermore, after traveling approximately 100 to 200 yards on the detour, Wayne used the citizens band radio to learn more about the condition of the road ahead. A truckdriver informed him that the detour was approx-

imately 2½ miles long and that it was "slick." Subsequently, as the Hammonds continued on the detour, the accident occurred.

Warnings would not have informed the driver of anything more than what such driver was already aware of. Based on the above undisputed facts, we conclude as a matter of law that the State did not have a duty to warn of a road condition of which a driver was aware and appreciated. Therefore, we reverse the district court's conclusion to the contrary.

## VI. CONCLUSION

We conclude that the State was exempt from suit pursuant to § 81-8,219(10). Even if the State has waived its immunity for a claim such as that before us, the State did not have a duty to warn Hammond. We need not address the State's remaining assigned error. We reverse and dismiss.

REVERSED AND DISMISSED.