Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/13/2023 08:08 AM CDT

Aaron G. Brown, appellant, v.
State of Nebraska, appellee.

___ N.W.2d ___

Filed October 13, 2023.    No. S-22-952.

1. **Tort Claims Act: Appeal and Error.** Whether a plaintiff's negligence claims are precluded by an exemption from the State Tort Claims Act is a question of law for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court.

2. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

3. **Constitutional Law: Actions: Legislature.** Under Neb. Const. art. V, § 22, the state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought.

4. **Political Subdivisions Tort Claims Act: Tort Claims Act: Immunity: Waiver: Legislature.** Through enactment of the State Tort Claims Act and the Political Subdivisions Tort Claims Act, the Legislature has allowed a limited waiver of sovereign immunity with respect to some, but not all, types of tort claims.

5. **Political Subdivisions Tort Claims Act: Tort Claims Act: Immunity: Waiver: Jurisdiction: Dismissal and Nonsuit.** Both the State Tort Claims Act and the Political Subdivisions Tort Claims Act expressly exempt certain claims from the limited waiver of sovereign immunity. And because the statutory exemptions identify those tort claims for which the sovereign retains immunity from suit, when an exemption applies, the proper remedy is to dismiss the claim for lack of subject matter jurisdiction.

6. **Statutes: Immunity: Waiver.** Statutes that purport to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver.

7. **Immunity: Waiver.** To strictly construe against a waiver of sovereign immunity, courts broadly read exemptions from a waiver of sovereign immunity.

8. **Statutes: Immunity: Waiver.** A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.

Appeal from the District Court for Buffalo County: John H. Marsh, Judge. Affirmed.

James R. Welsh, of Welsh & Welsh, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, Carlton W. Wiggam, and Maegan L. Woita for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Aaron G. Brown was sitting at a picnic table in a state-owned recreation area when a riding lawnmower operated by a state employee slipped on wet grass, slid down a slope, and collided with the picnic table, injuring Brown. Brown filed a lawsuit against the State alleging that his injuries were proximately caused by the negligence of the state employee. The district court granted summary judgment to the State, concluding that the State was immune from Brown's lawsuit under two exemptions to the State's waiver of sovereign immunity in the State Tort Claims Act (STCA): Neb. Rev. Stat. § 81-8,219(11) (Cum. Supp. 2022), which provides that the State is immune from certain claims arising out of conditions caused by weather, and § 81-8,219(14), which provides that the State is immune from certain claims relating to recreational activities on state property. In this appeal, we find that the State is immune under the weather conditions exemption and therefore affirm.

## I. BACKGROUND

### 1. The Collision

On an afternoon in August 2017, Brown visited a state recreation area. After fishing for some time, Brown decided to take a break. He moved to sit at a picnic table, which was next to a pond and at the bottom of a slope.

While Brown was seated at the picnic table, Joseph Blazek, a longtime park superintendent, started mowing grass in the area with a riding lawnmower. It had rained the previous day, and the grass was wet. Blazek eventually drove the mower along the top of the slope above where Brown was seated. The mower slipped on the wet grass, slid down the slope, and collided with the picnic table. As a result of the collision, Brown was thrown from the picnic table and suffered injuries.

### 2. Brown's Complaint; State's Motion to Dismiss

After the State Claims Board denied Brown's tort claim, he filed a lawsuit against the State. His complaint alleged negligence on the part of Blazek. Brown alleged, among other things, that Blazek had acted negligently by "failing to give an audible signal" and in "failing to exercise ordinary care under the circumstance[s]." Brown claimed that as a result of the collision, he had suffered injuries to his back and nervous system, he had incurred medical expenses, and he had lost income.

The State moved to dismiss Brown's complaint on the ground that the suit was barred by sovereign immunity. The district court granted the motion. It found that the suit fell within the STCA's recreational activity exemption.

Brown appealed the dismissal of his complaint, and, on appeal, we reversed the judgment and remanded the cause for further proceedings. See *Brown v. State*, 305 Neb. 111, 939 N.W.2d 354 (2020). We found that the allegations of Brown's complaint did not allow a finding at that stage of the case

that the claim was barred by the recreational activity exemption as a matter of law. *Id*.

### 3. Summary Judgment

After the case returned to the district court and the parties engaged in discovery, the State moved for summary judgment on several bases. The State sought summary judgment on the ground that it was immune from Brown's suit under the recreational activity exemption and the weather conditions exemption. Alternatively, the State claimed that it was entitled to summary judgment because Brown could not adduce evidence that would allow a reasonable fact finder to conclude either that the State breached a duty of care or that Brown was not contributorily negligent.

At the summary judgment hearing, the parties offered depositions of both Brown and Blazek. Brown testified that the collision occurred shortly after he first heard the mower. According to Brown, the mower slid down the slope and then the back end of the mower struck the picnic table, which threw him forward. Brown acknowledged that the grass in the area "was really slick" and added that the collision was "no fault of [Blazek's] because the grass was green and wet."

Blazek's account of the incident was generally similar to Brown's. Blazek testified that the collision occurred approximately 5 minutes after he began mowing in the area where Brown was sitting. According to Blazek, he slowed down the mower when he reached the crest of the slope because the grass was wet. He then saw Brown sitting in the area below and immediately turned the mower away from the area where Brown was sitting. As he was turning, the mower started slowly sliding down the slope and eventually bumped the picnic table. Blazek testified that the mower began to slide because it was on a wet and steep slope and that there was nothing he could do once the mower began to slide down the slope.

At the summary judgment hearing, the State also offered evidence showing that the areas surrounding the recreation

area received approximately an inch of precipitation the previous day. The district court also received a 2017 "Safety Reminder" memorandum directed to park superintendents. That document advised those operating lawnmowers to "[u]se caution when mowing on or near slopes or embankments, do not exceed recommended limits, slow down your piece of equipment, and avoid these areas when the grass is wet or the ground is muddy."

The district court entered summary judgment in favor of the State. It concluded that on the summary judgment record, both the recreational activity and weather conditions exemptions in the STCA applied, and that therefore, the State was immune from suit. Brown timely appealed.

## II. ASSIGNMENTS OF ERROR

Brown assigns that the district court erred by concluding that the State was immune from suit under (1) the weather conditions exemption and (2) the recreational activity exemption.

## III. STANDARD OF REVIEW

[1] Whether a plaintiff's negligence claims are precluded by an exemption from the STCA is a question of law for which an appellate court has a duty to reach its conclusions independent of the conclusions reached by the district court. See *Mercer v. North Central Serv.*, 308 Neb. 224, 953 N.W.2d 551 (2021).

[2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Schuemann v. Timperley*, 314 Neb. 298, 989 N.W.2d 921 (2023).

## IV. ANALYSIS

In this appeal, Brown contends that the district court erred by granting summary judgment to the State on sovereign immunity grounds. Before addressing Brown's specific arguments, we briefly review some basic principles regarding sovereign immunity.

## 1. Sovereign Immunity Overview

[3] Under the common-law doctrine of sovereign immunity, a sovereign could not be sued in its own courts without its consent. See, e.g., *Alden v. Maine*, 527 U.S. 706, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). In Nebraska, the sovereign immunity of the State and its political subdivisions is preserved in Neb. Const. art. V, § 22, which provides, "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." We have long held that this constitutional provision is not self-executing and that no suit may be maintained against the State or its political subdivisions unless the Legislature, by law, has so provided. See, e.g., *Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022).

[4,5] Through enactment of the STCA and the Political Subdivisions Tort Claims Act (PSTCA), the Legislature has allowed a limited waiver of sovereign immunity with respect to some, but not all, types of tort claims. *Clark, supra.* Both the STCA and PSTCA expressly exempt certain claims from the limited waiver of sovereign immunity. *Clark, supra.* And because the statutory exemptions identify those tort claims for which the sovereign retains immunity from suit, we have held that when an exemption under the STCA or the PSTCA applies, the proper remedy is to dismiss the claim for lack of subject matter jurisdiction. *Clark, supra.*

The weather conditions exemption and recreational activity exemption relied upon by the district court in this case are among the exemptions set forth in the STCA. We analyze whether the district court was correct to enter summary judgment based on the weather conditions exemption in the sections below.

## 2. Weather Conditions Exemption

The weather conditions exemption in the STCA applies to "[a]ny claim arising out of snow or ice conditions or other temporary conditions caused by nature on any highway as

defined in section 60-624, bridge, public thoroughfare, or other state-owned public place due to weather conditions." § 81-8,219(11). This exemption, however, is accompanied by a carve-out, as § 81-8,219(11) goes on to provide that "[n]othing in this subdivision shall be construed to limit the state's liability for any claim arising out of the operation of a motor vehicle by an employee of the state while acting within the course and scope of his or her employment by the state."

Brown offers two arguments as to why the district court erred by finding that the State was immune from suit under the weather conditions exemption. He first argues that his claim arises out of a state employee's operation of a motor vehicle in the course and scope of employment and therefore falls within § 81-8,219(11)'s carve-out for such claims. Alternatively, he argues that his claim does not fall within the weather conditions exemption because Blazek's negligence caused the collision. We address each of these arguments below.

(a) Motor Vehicle Carve-Out

Brown argues that his claim clearly arises out of a state employee's operation of a motor vehicle in the course and scope of employment and that we therefore need not address the rest of the weather conditions exemption. The State's response to Brown's argument is simple: It contends that a riding lawnmower is not a "motor vehicle" for purposes of § 81-8,219(11). The STCA does not define "motor vehicle," and it does not appear that a Nebraska appellate court has interpreted that term as it is used in the STCA or in the corresponding exemption in the PSTCA. See Neb. Rev. Stat. § 13-910(10) (Reissue 2022).

[6-8] When terms in a statute are not specifically defined by the statute, our principles of statutory interpretation generally require us to give such terms their plain and ordinary meaning. See *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019). When interpreting

statutes concerning the State's sovereign immunity, however, special rules of statutory interpretation come into play. Statutes that purport to waive the State's protection of sovereign immunity are strictly construed in favor of the sovereign and against the waiver. *Rouse v. State*, 301 Neb. 1037, 921 N.W.2d 355 (2019). To strictly construe against a waiver of sovereign immunity, we broadly read exemptions from a waiver of sovereign immunity. See *id.* A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction. *Id.*

The provision regarding claims arising out of the operation of motor vehicles in § 81-8,219(11) is, strictly speaking, neither a waiver of sovereign immunity nor an exemption from the waiver of sovereign immunity. Instead, the provision carves out an exception to an exemption from the State's waiver of sovereign immunity. By limiting an exemption, however, the provision expands the types of claims to which the State has consented to suit and thus functions in the same manner as a waiver of sovereign immunity. Because we construe statutes against the waiver of sovereign immunity, we must construe that provision and the term "motor vehicle" narrowly in this context. More specifically, our rules of interpretation dictate that we may not find that a riding lawnmower is a "motor vehicle" for purposes of § 81-8,219(11) if the statute can reasonably be construed otherwise. See *Rouse, supra.*

Notwithstanding these rules of interpretation, Brown argues that the riding lawnmower Blazek operated qualifies as a motor vehicle. In support, he points to Black's Law Dictionary's definition of "vehicle" as "[a]ny conveyance used in transporting passengers or things by land, water, or air." Black's Law Dictionary 1868 (11th ed. 2019). Because the riding lawnmower would qualify as a vehicle under this definition and because it was powered by a motor, Brown argues, it follows

that the riding lawnmower must be a motor vehicle for purposes of § 81-8,219(11).

Although Brown may well be correct that the term "motor vehicle" *can* be used broadly to refer to a riding lawnmower, we cannot agree that he has identified the *only* reasonable way that term is used. As the State observes, another dictionary defines "motor vehicle" more narrowly as "a vehicle on wheels, having its own motor and not running on rails or tracks, for use on streets or highways." Webster's New World College Dictionary 955 (5th ed. 2018). In a case in which a defendant accused of stealing a riding lawnmower was charged with motor vehicle theft, the Georgia Supreme Court found that this narrower definition was the plain and ordinary meaning of the term and concluded that a riding lawnmower was therefore not a motor vehicle. See *Harris v. State*, 286 Ga. 245, 686 S.E.2d 777 (2009). As that court reasoned, a riding lawnmower may be capable of driving on a street or highway for short stretches, but because it is not designed for such use, it does not qualify as a motor vehicle. See *id*. In a similar case, a Missouri appellate court reached the same conclusion. See *Fainter v. State*, 174 S.W.3d 718 (Mo. App. 2005) (concluding riding lawnmower was not motor vehicle because primary function of motor vehicle is to transport persons and things and primary function of lawnmower is to cut grass).

Because the statutorily undefined term "motor vehicle" in the STCA can reasonably be construed to include only those vehicles that are designed to be used on roads, we hold that a riding lawnmower is not a motor vehicle for purposes of the STCA. We caution that our holding in this case is limited to interpreting the term "motor vehicle" for purposes of § 81-8,219(11). The term "motor vehicle" is used in other statutes, but often with an accompanying statutory definition. See, e.g., Neb. Rev. Stat. § 60-638 (Reissue 2021). Further, other statutes in which that term is used may not be subject

to the same rules of interpretation that govern statutes concerning sovereign immunity.

Because Brown's claim does not arise out of the operation of a motor vehicle by a state employee, we proceed to consider his alternative argument that his claim was not covered by the weather conditions exemption.

### (b) Brown's Alternative Argument

Brown argues that even if the riding lawnmower was not a motor vehicle under the STCA, his claim is still not covered by the weather conditions exemption. More specifically, Brown argues that his claim does not fall within the weather conditions exemption because Blazek's negligence caused his injuries.

Brown's argument that his claim is not covered by the weather conditions exemption because Blazek's negligence caused his injuries fails to take account of the text of the weather conditions exemption. Under the text of § 81-8,219(11), the weather conditions exemption applies and the State is immune from suit if a plaintiff's claim (1) arises out of snow, ice, or other temporary conditions caused by nature and due to weather conditions, (2) on a highway, bridge, public thoroughfare, or other state-owned public place, so long as (3) the claim does not arise out of the operation of a motor vehicle by an employee of the state while acting within the course and scope of his or her employment.

Here, Brown does not dispute that the wet grass in the recreation area on the day of the collision was a temporary condition caused by nature and due to weather. Neither does he dispute that the recreation area was a state-owned public place. See *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015) (affirming district court's determination that sidewalk on grounds of public building and maintained by city for public use was public place for purposes of weather conditions exemption of PSTCA). And, for reasons discussed above, the claim does not arise out of a state employee's operation

of a motor vehicle in the course and scope of employment. Accordingly, application of the weather conditions exemption in this case turns not on whether Blazek's negligence was a cause of Brown's injuries, but on whether Brown's claim arises out of the wet grass in the recreation area.

To decide whether Brown's claim arose out of a condition covered by the weather conditions exemption, consideration must be given to the meaning of the phrase "arising out of" in § 81-8,219(11). On this issue, precedent from this court and the Nebraska Court of Appeals provides some guidance. When we have encountered the phrase "arising out of" in insurance contracts, we have described it as "broad and comprehensive; ordinarily understood to mean originating from, growing out of, or flowing from; and requiring only a 'but for' causal connection between the occurrence and the conduct or activity specified in the policy." *Federated Serv. Ins. Co. v. Alliance Constr.*, 282 Neb. 638, 649-50, 805 N.W.2d 468, 478 (2011). The Court of Appeals relied on this court's interpretation of the phrase "arising out of" in insurance contracts in determining the meaning of that phrase for purposes of the weather conditions exemption to the PSTCA. See *Hammond v. Nemaha Cty.*, 7 Neb. App. 124, 581 N.W.2d 82 (1998). The Court of Appeals concluded that where there is a causal relationship between a temporary condition caused by nature and due to weather and the plaintiff's claim, the claim arises out of that condition. See *id.* See, also, *Dion v. City of Omaha*, 311 Neb. 522, 540, 973 N.W.2d 666, 681 (2022) (explaining that in determining whether claim "aris[es] out of" intentional tort for purposes of § 13-910(7), consideration is given to whether claim "stems from, arises out of, is inextricably linked to, is essential to, and would not exist without one of the underlying intentional torts").

We find the Court of Appeals' interpretation of the phrase "arising out of" in *Hammond, supra*, is consistent with the statutory language of the weather conditions exemption and our rules for construing exemptions to the State's waiver of

sovereign immunity. Accordingly, application of the weather conditions exemption in this case depends upon whether there is a causal relationship between Brown's claim and the wet grass conditions.

Undisputed evidence received at the summary judgment hearing established such a causal relationship. Brown's claim stems from the lawnmower's slide down the slope and the resulting collision with the picnic table. And, as we described above, Blazek testified that the lawnmower slid down the slope because of the wet conditions and that once the mower started sliding, there was nothing he could do to stop it. Not only did Brown not provide any evidence to contradict Blazek's testimony that the lawnmower slid down the slope because of the wet grass, he corroborated it, testifying that the collision occurred because of the wet conditions and through no fault of Blazek's. Because the evidence established a causal relationship between the wet grass in the recreation area and Brown's injuries, Brown's claim arises out of a temporary condition caused by nature and due to weather.

We are not dissuaded from our conclusion that Brown's claim is covered by the weather conditions exemption even after considering two cases of this court upon which Brown relies: *Woollen v. State*, 256 Neb. 865, 593 N.W.2d 729 (1999), *abrogated on other grounds, A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907 (2010), and *McDonald v. DeCamp Legal Servs.*, 260 Neb. 729, 619 N.W.2d 583 (2000).

In *Woollen*, a driver was injured when his car hydroplaned on rainwater that had pooled on a highway because of ruts on the road's surface. The driver sued the State, alleging it was negligent in maintaining the road, and obtained a recovery. On appeal, we affirmed the trial court's finding that the weather conditions exemption did not apply. Evidence at trial established that the ruts had existed for many years and that the State was aware of the ruts and the risks they posed prior to the accident. In affirming the trial court's decision that the

State was not immune under the weather conditions exemption, we emphasized that the trial court had found that "the ruts on the road were a condition created over time which caused [the] accident, and [the] accident was not due to a temporary condition caused by nature due to the weather." *Woollen*, 256 Neb. at 877, 593 N.W.2d at 739. See, also, *id*. at 878, 593 N.W.2d at 739 (observing that highway became rutted "through use and the passage of time"). Those findings drove our conclusion that the condition at issue in *Woollen* was neither temporary nor caused by nature and due to weather.

*McDonald* was a legal malpractice action in which the plaintiff alleged that his attorney had failed to timely file a lawsuit against a political subdivision after the plaintiff slipped and fell on snow and ice in a parking lot. The defendant-attorney responded that the plaintiff could not show that any negligence on the part of the attorney resulted in damages, because the plaintiff's claim, even if timely filed, would have been barred by the weather conditions exemption of the PSTCA. The Court of Appeals held that the political subdivision would not have been immune under the weather conditions exemption of the PSTCA, and we affirmed. Our decision in *McDonald* affirmed the decision of the Court of Appeals with little analysis. The Court of Appeals did not say much more, but concluded that the political subdivision was not immune, because the plaintiff alleged injury based on the "manner in which [the political subdivision] cleared and piled the snow and ice from [its] parking lot, not because of the actual snow or ice." *McDonald v. DeCamp Legal Servs.*, No. A-98-954, 2000 WL 249769 at *3 (Neb. App. Mar. 7, 2000) (not designated for permanent publication).

Although neither our reasoning nor that of the Court of Appeals in *McDonald* is perfectly clear given the limited analysis, the language in the Court of Appeals' opinion quoted above indicates the result may have turned on a determination that the conditions in the parking lot were caused not

by nature, but by negligent clearing and piling of snow and ice by human agents of the political subdivision. Cf. *Porter v. Grant Cty. Bd. of Educ.*, 219 W.Va. 282, 633 S.E.2d 38 (2006) (discussing similar governmental immunity statute and distinguishing cases where snow or ice naturally accumulates on walkway and cases where government agents affirmatively place snow or ice on walkway).

To the extent immunity was found not to apply in *Woollen* and *McDonald* because the conditions at issue in those cases were found not to be temporary conditions caused by nature and due to weather, those cases are of no assistance to Brown. There is no dispute in this case that the wet grass in the recreation area was a temporary condition caused by nature and due to weather. In any event, in neither *Woollen* nor *McDonald* did we analyze the meaning of "arising out of" in the context of the weather conditions exemption. Having analyzed the meaning of that phrase and the summary judgment record here, we see no principled basis upon which we could find that Brown's claim does not arise out of a temporary condition caused by nature and due to weather on a state-owned public place.

At oral argument, Brown made a slightly different argument in which he emphasized two specific theories of negligence: Brown asserted that Blazek should not have operated the lawnmower at all because of the wet conditions or, alternatively, should have advised Brown that given the wet conditions, he was at risk while sitting at the picnic table and should move. We are not convinced that these theories of negligence help Brown in avoiding application of the weather conditions exemption. Both proffered theories of negligence depend on the wet grass, and even if the alleged negligent acts chronologically preceded the slide on the wet grass, the undisputed evidence establishes that the wet grass played a causal role in the collision.

We find that the district court did not err in granting summary judgment to the State based on the weather conditions

exemption. Accordingly, we need not decide whether the district court was also correct to find that the State was immune based on the recreational activity exemption.

## V. CONCLUSION

We find that the district court did not err in granting summary judgment to the State based on the STCA's weather conditions exemption. We therefore affirm.

Affirmed.