## S09G0870. HARRIS v. THE STATE.

(686 SE2d 777)

NAHMIAS, Justice.

We granted certiorari to decide whether the Court of Appeals erred in concluding that a riding lawnmower is a "motor vehicle" as that term is used in the statute punishing theft of a motor vehicle, OCGA § 16-8-12 (a) (5) (A). See *Harris v. State*, 295 Ga. App. 727, 729-730 (673 SE2d 76) (2009). We hold that the Court of Appeals did err and that appellant's conviction for theft of a motor vehicle should be reversed and the case remanded for resentencing.

1. Franklin Lloyd Harris and two associates stole a Toro riding lawnmower worth more than $500 from outside a Home Depot in Dalton, Georgia. They loaded the lawnmower into the back of a van and drove it to Athens, Tennessee, where they sold it. Police later identified Harris as one of the thieves, and he was charged with and convicted by a jury of theft of a motor vehicle (Count 1) and felony theft by taking (Count 2). The trial court merged Count 2 into Count 1 and sentenced Harris, who had three prior felony convictions, to the statutory maximum of ten years in prison. See OCGA § 17-10-7.

At the close of the State's case at trial and in a motion for new trial, Harris argued that a riding lawnmower does not qualify as a "motor vehicle" under OCGA § 16-8-12 (a) (5) (A), but the trial court rejected that argument. The Court of Appeals affirmed the convictions, also holding, among other things, that a riding lawnmower is a "motor vehicle" under that statute. *Harris*, 295 Ga. App. at 729-730. Only that issue is raised on certiorari before this Court.

2. OCGA §§ 16-8-2 through 16-8-9 set forth a series of theft-related criminal offenses including theft by taking, which prohibits "unlawfully tak[ing] . . . any property of another with the intention of depriving him of the property," OCGA § 16-8-2. OCGA § 16-8-12 then establishes different punishment ranges for different varieties of theft. "If the property which was the subject of the theft exceeded $500.00 in value," the penalty is "imprisonment for not less than one nor more than ten years or, in the discretion of the trial judge, as for a misdemeanor." OCGA § 16-8-12 (a) (1). This was the "felony theft by taking" offense of which Harris was convicted in Count 2.

OCGA § 16-8-12 (a) (5) provides, in relevant part and with emphasis supplied, as follows:

> (A) The provisions of paragraph (1) of this subsection notwithstanding, if the property which was the subject of the theft was a *motor vehicle* or was a *motor vehicle* part or component which exceeded $100.00 in value . . . , by imprisonment for not less than one nor more than ten years or, in

the discretion of the trial judge, as for a misdemeanor; provided, however, that any person who is convicted of a second or subsequent offense under this paragraph shall be punished by imprisonment for not less than one year nor more than 20 years.

(B) Subsequent offenses committed under this paragraph, including those which may have been committed after prior felony convictions unrelated to this paragraph, shall be punished as provided in Code Section 17-10-7.

This is the "motor vehicle theft" of which Harris was convicted in Count 1. It applies only if the stolen property was a "motor vehicle" or a "motor vehicle part or component which exceeded $100.00 in value," although the penalty differs from that for felony theft by taking only for repeat violators or for thefts of motor vehicles or parts worth between $100 and $500.

3. In deciding whether the riding lawnmower that Harris stole is such a "motor vehicle," we begin with the ordinary meaning of that phrase, which is not a term of art or a technical term. See OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words, except words of art or words connected with a particular trade or subject matter, which shall have the signification attached to them by experts in such trade or with reference to such subject matter."); *Abdulkadir v. State*, 279 Ga. 122, 123 (610 SE2d 50) (2005). A riding lawnmower capable of carrying a person is certainly a "vehicle," in the broad sense in which that single word is commonly used. See Webster's New World College Dictionary (2005 ed.) (Webster's Dictionary) (defining "vehicle" to include "any device or contrivance for carrying or conveying persons or objects, esp. over land or in space, as an automobile, bicycle, sled, or spacecraft"). A riding lawnmower is also a "vehicle with a motor," as are a huge range of mechanized vehicles from children's battery-powered mini-cars to mopeds, automobiles, trucks, trains, ships, and space shuttles. If an expansive phrase such as "a vehicle with a motor" were used in OCGA § 16-8-12 (a) (5) (A), as occurs in a few other places in the Code, see, e.g., OCGA § 16-5-44.1 (a) (2) (" '[m]otor vehicle' means any vehicle which is self-propelled"), this would be an easy case.

But the two-word phrase used in OCGA § 16-8-12 (a) (5) (A) — "motor vehicle" — has a narrower connotation. A "motor vehicle" is commonly understood to mean a self-propelled vehicle with wheels that is designed to be used, or is ordinarily used, to transport people or property on roads. That is the dictionary definition of the term. See Webster's Dictionary (defining "motor vehicle" as "a vehicle on wheels, having its own motor and not running in rails or tracks, *for*

*use on streets or highways; esp., an automobile, truck, or bus"* (emphasis supplied)). Not surprisingly, that is also how a large number of Georgia statutes specifically define the term, although the precise wording of the various iterations may differ.[1]

By this ordinary meaning, a riding lawnmower is *not* a "motor vehicle." To be sure, a riding lawnmower is *capable* of transporting people or property and of driving on the street for short stretches, but that is not what the machine is designed for or how it is normally used — there being little grass to mow on streets, and there being faster and less noisy ways of moving people and property around. The parties have identified only one other court that has considered whether a riding lawnmower qualifies as a "motor vehicle" in the theft context, and that court reached the same conclusion. In *Fainter v. State*, 174 SW3d 718 (Mo. App. 2005), the Missouri Court of Appeals reversed a conviction for stealing a "motor vehicle" based upon the theft of a riding lawnmower. The court held that, in the absence of a statutory definition to the contrary, "the distinct identity of a motor vehicle is its *primary* designed function to transport persons and things," and "[a]lthough a riding lawn mower is designed to transport a person, its primary function is to cut grass." Id. at 721 (emphasis in original).

4. Looking beyond the specific provision at issue to the statutory scheme as a whole only confirms this interpretation. See *Higdon v. City of Senoia*, 273 Ga. 83, 86 (538 SE2d 39) (2000) ("All statutes are presumed to be enacted with full knowledge of existing law and their meaning and effect is to be determined with reference to the

---

[1] All with emphasis supplied, see, e.g., OCGA §§ 10-1-31 (a) (4) (as used in article on sales financing, " '[m]otor vehicle' means any device or vehicle including automobiles, motorcycles, motor trucks, trailers, and all other vehicles *operated over the public highways and streets of this state* and propelled by power other than muscular power but does not include traction engines, road rollers, implements of husbandry and other agricultural equipment, and such vehicles as run only upon a track"); 12-9-43 (17) (as used in article on emission inspection and maintenance, " '[m]otor vehicle' means any contrivance propelled by power other than muscular power, *used for transportation of persons or property on highways*, and not operated exclusively upon tracks"); 36-92-1 (6) (as used in chapter on local government entities, " '[m]otor vehicle' means any automobile, bus, motorcycle, truck, trailer, or semitrailer, including its equipment, and any other equipment permanently attached thereto, *designed or licensed for use on the public streets, roads, and highways of the state*"); 40-2-39 (a) (5) (as used in section on engaging in activity as a new motor vehicle dealer, " '[m]otor vehicle' means every self-propelled vehicle *intended primarily for use and operation on the public highways*, except farm tractors and other machines and tools used in the production, harvesting, and care of farm products and except construction equipment"); 48-5-440 (4) (as used in article on ad valorem taxation of motor vehicles, " '[m]otor vehicle' means a vehicle which is *designed primarily for use upon the public roads.* Such term shall not include heavy-duty equipment . . . ."); 48-9-2 (10) (as used in article on motor fuel tax, " '[m]otor vehicle' means . . . [e]very self-propelled vehicle *designed for operation or required to be licensed for operation upon the public highways*; and . . . [a]ny other machine or mechanical contrivance using motor fuel to the extent that the machine or contrivance is operated upon the public highways").

constitution as well as other statutes and decisions of the courts."). The General Assembly did not specifically define the term "motor vehicle" in the theft article or the criminal title of the Georgia Code or in the few general definitions in OCGA § 1-3-3. The term "motor vehicle" is used hundreds of times in many contexts throughout the Code, often without definition; where a specific definition is provided, as noted previously, it usually, although not invariably, corresponds to the term's ordinary meaning.

The entire Title 40 of the Code is labeled "Motor Vehicles and Traffic," and it includes at its outset a set of detailed definitions for many vehicle-related terms. See OCGA § 40-1-1. Although those definitions are introduced with the phrase "[a]s used in this title," they are the formulations to which both parties direct our attention, to which the Court of Appeals has cited in interpreting the theft article, see *Harris*, 295 Ga. App. at 729-730 (collecting cases), and to which some sections of the Criminal Code that use the term "motor vehicle" expressly refer for a definition, see, e.g., OCGA §§ 16-6-13.2 (provision on forfeiture of motor vehicles used in pimping and pandering, defining " '[m]otor vehicle' or 'vehicle' " as "any motor vehicle as defined in Code Section 40-1-1"); 16-9-70 (same, in provision on criminal use of an article with an altered identification mark). It is therefore worth some analysis of the definitions in Title 40.

Reflecting the word's ordinary meaning, Title 40 defines "vehicle" very broadly, to mean "every device in, upon, or by which any person or property *is or may be transported or drawn upon a highway*, excepting devices used exclusively upon stationary rails or tracks." OCGA § 40-1-1 (75) (emphasis supplied). Although Harris argues to the contrary, a riding lawnmower is a "vehicle" by this definition, as most people have at some time seen a riding lawnmower transporting a person upon a highway, if only to get the device around a barrier or from one side of the street to another. See *Simpson v. Reed*, 186 Ga. App. 297, 297 (367 SE2d 563) (1988) (negligence case involving a person struck by a car "as he was crossing a rural highway on a riding lawnmower"). Title 40 then appears to define "[m]otor vehicle" broadly, to mean "every vehicle which is self-propelled other than an electric personal assistive mobility device (EPAMD)." OCGA § 40-1-1 (33). Reading that provision in isolation, as the State urges us to do, a riding lawnmower would be a "motor vehicle," as it is a "vehicle which is self-propelled" (and is not an EPAMD), or, to use the similar phrase discussed previously, it is a "vehicle with a motor."

However, if we are to look to OCGA § 40-1-1 for guidance, then we should read all of the definitions contained in that section together, and a set of vehicles that would otherwise qualify as "motor

vehicles" is carved out of that category, leaving the term with its more natural connotation:

> "Special mobile equipment" means every vehicle not designed or used *primarily* for the transportation of persons or property and only *incidentally* operated or moved over a highway, including but not limited to: ditch-digging apparatus, well-boring apparatus, and road construction and maintenance machinery such as asphalt spreaders, bituminous mixers, bucket loaders, *tractors other than truck tractors*, ditchers, leveling graders, finishing machines, motor graders, road rollers, scarifiers, earth-moving carryalls and scrapers, power shovels and drag lines, and self-propelled cranes and earth-moving equipment. The term does not include house trailers, dump trucks, truck mounted transit mixers, cranes or shovels, or other vehicles *designed for* the transportation of persons or property to which machinery has been attached.

OCGA § 40-1-1 (59) (emphasis supplied).

With this definition, the General Assembly recognized that some "vehicles which are self-propelled" are not designed for or ordinarily used to transport persons or property and are not ordinarily used on the road — even if such vehicles are able to do so or are used incidentally to do so. A riding lawnmower fits easily within this definition, as a riding lawnmower is closely akin to a "tractor" with a mowing attachment; moreover, like much of the construction equipment listed in OCGA § 40-1-1 (59), riding lawnmowers are used primarily to work along and around highways, not to move people or goods on highways. Accordingly, if in interpreting OCGA § 16-8-12 we look to OCGA § 40-1-1, the definition there that most closely applies to riding lawnmowers is "special mobile equipment" rather than simply "motor vehicle."

This understanding of the interaction between the term "motor vehicle" as used in OCGA § 16-8-12 and the definitions in OCGA § 40-1-1 is bolstered by the "Chop Shop" Act, OCGA §§ 16-8-80 through 16-8-86, which is also part of Chapter 8 of the Criminal Code. In the Chop Shop Act's definitions section, OCGA § 16-8-82 (2), the General Assembly again used the term "motor vehicle," but needed to define it specifically to reach some items that would otherwise be excluded from the ordinary meaning of that term and would be "special mobile equipment" under OCGA § 40-1-1. The definition of "motor vehicle" therefore begins in a way that mirrors the definitions of "vehicle" and "motor vehicle" in OCGA § 40-1-1 (75) and (33), but then it *adds* language to include the type of

construction, farm, and other machinery — like riding lawnmowers — that otherwise would be excluded from coverage by the ordinary meaning of "motor vehicle" and the definition of "special mobile equipment":

> "Motor vehicle" includes every device in, upon, or by which any person or property is or may be transported or drawn upon a highway [cf. OCGA § 40-1-1 (75)] which is self-propelled or which may be connected to and towed by a self-propelled device [cf. OCGA § 40-1-1 (33)] *and also includes any and all other land based devices which are self-propelled but which are not designed for use upon a highway, including, but not limited to, farm machinery and construction equipment* [cf. OCGA § 40-1-1 (59)].

OCGA § 16-8-82 (2) (emphasis and bracketed material supplied).

These legislative distinctions also make some sense. What most distinguishes the theft of a "motor vehicle" from the theft of other property is not its value or its ability to be easily escaped *with*, as many items are more valuable or more easily loaded into the back of a van and driven away. What makes motor vehicles, as that term is properly understood, most worthy of specialized treatment is that they are an unusual type of personal property which, once stolen, can be readily escaped *in*. A thief can steal and escape quickly in an automobile, a motorcycle, a truck, or even a four-wheeler, but not on a riding lawnmower, asphalt spreader, or skid steer. The Chop Shop Act, which is of more recent vintage, is more focused on the marketability of already-stolen vehicles and their parts, which may include vehicles of large value (like construction and farm equipment) even if those vehicles are more difficult to steal in the first place.

Similarly, in another provision of the Criminal Code, motor vehicle hijacking (commonly referred to as "carjacking"), where the ability to easily escape in a stolen vehicle might otherwise reinforce the ordinary meaning of "motor vehicle," the General Assembly again found it necessary to *expressly* define the term to be broader and to convey the intent to cover *all* vehicles with a motor. See OCGA § 16-5-44.1 (a) (2) ("As used in this Code section: . . . 'motor vehicle' means any vehicle which is self-propelled.").

5. The dissenting opinion would interpret a riding lawnmower to be a "motor vehicle," as that term is used in the motor vehicle theft statute, because a riding lawnmower comes within the specific definitions of "motor vehicle" used in the chop shop and carjacking statutes, which are also theft-related offenses in Title 16, and because, the dissent argues, criminal theft statutes are designed to

"protect individuals from having their personal property *taken*." Dissenting opinion p. 256 (emphasis in original). This analysis is misguided, however, in several ways.

First and most fundamentally, the dissent entirely ignores the ordinary meaning of the term "motor vehicle," a term the General Assembly elected not to define in some other way in OCGA § 16-8-12 (a) (5) (A) or in the theft article or the criminal title generally. It also disregards the definitions of the term predominantly employed throughout the Code, including but by no means limited to in Title 40, that confirm the ordinary meaning of the term.

Second, it is illogical to conclude that a term used in OCGA § 16-8-12 (a) (5) (A) without specific definition must be interpreted more broadly because of two different and more expansive definitions of the same term used in two other statutes that were enacted some time later. Indeed, if the term "motor vehicle" as used in *any* criminal theft statute clearly means "any vehicle which is self-propelled," it would have been unnecessary for the General Assembly to specifically define the term in that way in the later-enacted carjacking statute — or to define the term in yet another way in the Chop Shop Act. The dissent does not explain which of those two definitions is the one supposedly applicable to OCGA § 16-8-12 (a) (5) (A). Moreover, its view that the term *already meant* what the General Assembly later used many words to define would render those many words surplusage, in violation of another fundamental canon of statutory construction. See *Currid v. DeKalb State Court Probation Dept.*, 285 Ga. 184, 187 (674 SE2d 894) (2009) (" '[W]e apply the fundamental rules of statutory construction that require us to construe (the) statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage.' ") (citation omitted).

Finally, saying that the criminal theft statutes are designed to protect individuals from having their personal property taken provides little support to the argument that a riding lawnmower is a "motor vehicle" for purposes of the motor vehicle theft provision. Under the theft by taking statute, OCGA § 16-8-2, and other general criminal theft statutes, it is a crime to steal a riding lawnmower or any other personal property. The penalty provisions in OCGA § 16-8-12 and the substantive and penalty provisions of the more specific statutes in the theft article obviously apply to more limited sets of situations and items, and they should not be read to reach beyond what their text says.[2]

---

[2] Indeed, even most prosecutors in this State appear to have recognized that riding lawnmowers are not "motor vehicles" under OCGA § 16-8-12 (a) (5) (A). Thus, while riding

252

6. In its previous cases addressing whether various types of vehicles were "motor vehicles" under OCGA § 16-8-12 (a) (5) (A), the Court of Appeals has used inconsistent and questionable approaches to interpreting the statute. Remarkably, in none of the cases did the Court of Appeals discuss the ordinary meaning of the undefined statutory term "motor vehicle." Instead, the court has looked to the definitions in OCGA § 40-1-1, but without also looking to the definitions used elsewhere in the Code. Sometimes the court has stopped with the definition of "motor vehicle" in OCGA § 40-1-1 (33), see *Browning v. State*, 207 Ga. App. 547, 548 (428 SE2d 441) (1993) (holding that a tractor is a "motor vehicle"); *Norwood v. State*, 265 Ga. App. 862, 864 (595 SE2d 537) (2004) (holding that a four-wheeler is a "motor vehicle"), while in another case the court also looked to the definition of "special mobile equipment" in OCGA § 40-1-1 (59), see *Barron v. State*, 291 Ga. App. 494, 495 (662 SE2d 285) (2008) (holding that a skid steer is "special mobile equipment" and not a "motor vehicle").[3]

In this case, the Court of Appeals cited both OCGA § 40-1-1 definitions and those prior cases, as well as *Coker v. State*, 261 Ga. App. 646, 647 (583 SE2d 498) (2003), where the court also looked to the definitions in OCGA § 40-1-1 to hold that a golf cart was a "motor vehicle" subject to the driver's license requirement of OCGA § 40-5-20 (a).[4] *Harris*, 295 Ga. App. at 729-730. Then, rather than considering the ordinary meaning of the undefined term "motor vehicle," considering the statutory scheme as a whole, or even parsing the OCGA § 40-1-1 definitions of "motor vehicle" and

lawnmowers have undoubtedly been stolen with some regularity in Georgia, and there are in fact several reported cases in which such thefts were charged, we are aware of no case before this one in which the district attorney thought to charge the crime as motor vehicle theft – including one case in which the defendant actually did start the riding lawnmower and escape on it down the road. See *Hammett v. State*, 246 Ga. App. 287, 287 (539 SE2d 193) (2000) (appellant convicted of theft by taking after stealing a riding lawnmower by cranking it and riding it down the road, where he hid it in some bushes before trading it for crack cocaine the next day). See also *Martin v. State*, 300 Ga. App. 39 (684 SE2d 111) (2009) (defendant who sold two stolen riding lawnmowers convicted of theft by receiving); *Phillips v. State*, 167 Ga. App. 260, 260 (305 SE2d 918) (1983) (defendant who stole a riding lawnmower convicted of burglary); *Aldridge v. State*, 158 Ga. App. 719, 719 (282 SE2d 189) (1981) (defendants who stole a riding mower convicted of theft by taking); *Queen v. State*, 131 Ga. App. 370, 370, 372 (205 SE2d 921) (1974) (defendant convicted only of felony theft by taking for stealing a riding lawnmower, even though the case involved an issue of the defendant's involvement in the "car stealing" business).

[3] While disapproving of the analysis used in these cases, we express no opinion as to their results, as the question whether those types of vehicles are covered by the motor vehicle theft statute is not presented here.

[4] It was proper for the *Coker* court to rely solely on the definitions in OCGA § 40-1-1, because it was interpreting a provision of the title to which those definitions expressly apply. It is not clear why the holding in that case would be considered to apply directly to the meaning of a term in another title.

"special mobile equipment," the Court of Appeals focused on the results of its prior cases and concluded that a riding lawnmower is "more analogous to a tractor and a four-wheeler than to a skid steer" and thus was a "motor vehicle" for purposes of the motor vehicle theft statute. *Harris*, 295 Ga. App. at 730. That focus led to the wrong conclusion.

7. It might be contended that the answer to the question presented is not crystal clear, as suggested by the length of this opinion. But to the extent that, after applying the usual tools of statutory construction, it is uncertain or ambiguous whether OCGA § 16-8-12 (a) (5) (A) applies to a riding lawnmower, the rule of lenity would require us to give the benefit of that doubt to the accused. *Fainter*, 174 SW3d at 720. See *Fleet Finance, Inc. v. Jones*, 263 Ga. 228, 231 (430 SE2d 352) (1993) (criminal statute "must be construed strictly against criminal liability and, if it is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted"); *Adamo Wrecking Co. v. United States*, 434 U. S. 275, 284-285 (98 SC 566, 54 LE2d 538) (1978) ("At the very least, it may be said that the issue is subject to some doubt. Under these circumstances, we adhere to the familiar rule that, 'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.' ") (citation omitted).

The General Assembly may of course expressly define "motor vehicle" more broadly, but we are not at liberty to do so. For these reasons, we hold that a riding lawnmower is not a "motor vehicle" as that term is used in the motor vehicle theft statute, OCGA § 16-8-12 (a) (5) (A).

8. Harris's conviction for motor vehicle theft — Count 1 — must therefore be reversed. However, he was also convicted of theft by taking, and on remand that conviction will be "unmerged" from the reversed count and he should be sentenced on Count 2. See *Sanders v. State*, 281 Ga. 36, 37-38 (635 SE2d 772) (2006). Because the value of the stolen lawnmower exceeded $500, Harris still will face a sentence of up to ten years, and so he may receive the same sentence, particularly given his recidivist status, but we leave that decision to the trial court on remand. Indeed, the ultimate result of most cases against riding lawnmower thieves will not be affected by our decision today, particularly if they are not repeat violators and the mower is worth more than $500. They cannot, however, be convicted of motor vehicle theft.

*Judgment reversed and case remanded with direction. All the Justices concur, except Thompson, Hines, and Melton, JJ., who dissent.*

254

MELTON, Justice, dissenting.

This case involves the crime of theft. In the context of *theft* within Title 16 of the Georgia Code, the legislature has specifically defined the term "motor vehicle" broadly enough to encompass a riding lawnmower. See OCGA §§ 16-8-82 (2) and 16-5-44.1 (a) (2). The majority, however, erroneously relies on inapplicable "motor vehicle" definitions that apply to the *use* of a vehicle on the roads (see generally OCGA § 40-1-1), as opposed to the *theft* of a vehicle, in order to reach its intended conclusion that a riding lawnmower is not a "motor vehicle" for purposes of sentencing for theft. I therefore must respectfully dissent from the majority's erroneous conclusion that a riding lawnmower is not a "motor vehicle" for purposes of sentencing pursuant to OCGA § 16-8-12 (a) (5) (A).

OCGA § 16-8-12 (a) (5) (A) provides that

> if the property which was the subject of [a] *theft* was a motor vehicle or was a motor vehicle part or component which exceeded $100.00 in value . . . , [the thief shall be punished] by imprisonment for not less than one nor more than ten years or, in the discretion of the trial judge, as for a misdemeanor; provided, however, that any person who is convicted of a second or subsequent offense under this paragraph shall be punished by imprisonment for not less than one year nor more than 20 years.

(Emphasis supplied.)

Although the term "motor vehicle" is not defined in OCGA § 16-8-12 (a) (5) (A), "[i]n construing [this] statute, the cardinal rule is to glean the intent of the legislature." (Citation and punctuation omitted.) *Retention Alternatives, Ltd. v. Hayward*, 285 Ga. 437, 438 (1) (678 SE2d 877) (2009). In order to do this, we must presume that the statute was

> enacted by the legislature with full knowledge of the exist-ing condition of the law and with reference to it. It is therefore to be construed in connection and *in harmony with* the existing law, and as a part of a general and uniform system of jurisprudence, and its meaning and effect is to be determined in connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts.

(Citations and punctuation omitted; emphasis supplied.) Id. at 440 (2).

Accordingly, because the statute at issue here deals with the

punishment relating to the theft of a motor vehicle, our task in this case is to determine the consistent intent of the legislature as it relates to the definition of the term "motor vehicle" in the context of criminal theft. In this regard, the legislature has made clear elsewhere in Title 16 that, when a "motor vehicle or motor vehicle part known to be *illegally obtained by theft*" is taken to a "chop shop" in order to be sold or disposed of, a "motor vehicle" would consist of

> every device in, upon, or by which any person or property is or may be transported or drawn upon a highway which is self-propelled or which may be connected to and towed by a self-propelled device and also includes *any and all other land based devices which are self-propelled but which are not designed for use upon a highway, including, but not limited to, farm machinery and construction equipment.*

(Emphasis supplied.) OCGA § 16-8-82 (2). This definition of "motor vehicle" is obviously broad enough to encompass a riding lawnmower. Thus, if a riding lawnmower were stolen and taken to a "chop shop," it would be a "motor vehicle" for purposes of its theft and storage or dismantling at a chop shop.

Under the majority's analysis, however, a riding lawnmower would not be a "motor vehicle" if simply stolen, but would magically transform into a "motor vehicle" once taken to a chop shop for dismantling or sale. Similarly, an engine worth over $100 that was stolen from a riding lawnmower would not become a "motor vehicle part" until it was taken to a chop shop. Far from construing OCGA § 16-8-12 (a) (5) (A) "in harmony with" existing pronouncements by the legislature (see *Retention Alternatives, Ltd.*, supra), the majority has interpreted the statute in a manner that creates conflict and leads to an absurd result. As such, the majority's interpretation cannot stand. See *Haugen v. Henry County*, 277 Ga. 743, 746 (2) (594 SE2d 324) (2004) ("The judiciary has the duty to reject a construction of a statute which will result in unreasonable consequences or absurd results not contemplated by the legislature.") (citation omitted).

OCGA § 16-5-44.1 provides even more evidence that the majority's interpretation of the term "motor vehicle" runs directly contrary to the intent of the legislature. Indeed, when a person, "while in possession of a firearm or weapon obtains a motor vehicle from the person or presence of another by force and violence[,]" that person commits the offense of hijacking a "motor vehicle." OCGA § 16-5-44.1 (b). "Motor vehicle" is broadly defined here as "any vehicle which is self-propelled." OCGA § 16-5-44.1 (a) (2). Again, in the context of a vehicle being stolen, the legislature has made clear that the definition

of "motor vehicle" would encompass a riding lawnmower. Yet, the majority would cite this statute to reach exactly the opposite result.

Moreover, the majority directly violates well-established rules of statutory construction when it contends that it is "illogical" to consider the definitions of "motor vehicle" from the "later enacted" hijacking and chop shop statutes when trying to discern the definition of "motor vehicle" in the context of theft. "Indeed, the courts are not only to be guided by the General Assembly's last expression on a subject, but *the latest declaration controls*." (Citations omitted; emphasis supplied.) *Tippins Bank & Trust Co. v. Southern Gen. Ins. Co.*, 266 Ga. 97, 98 (464 SE2d 381) (1995). Thus, again, these latest declarations from the legislature on the definition of "motor vehicle" in the context of theft only further support the notion that the legislature clearly intended to treat a riding lawnmower as a "motor vehicle" for purposes of theft. The majority, however, would interpret these latest and controlling definitions of the term "motor vehicle" in a manner that would reach a result that is directly contrary to the legislature's expressed intent.

The problems with the majority arise from its reliance on Title 40 of the Georgia Code, as opposed to the aforementioned Georgia criminal statutes dealing directly with the theft of motor vehicles, in its attempt to glean the legislature's intent with respect to the definition of the term "motor vehicle" in the context of motor vehicle theft. Title 40 has no applicability here, as the Code sections therein relating to "Motor Vehicles and Traffic" are designed to protect the public by regulating the *use* of vehicles on the road.[5] They are not designed to protect individuals from having their personal property *taken*, as the criminal theft statutes are specifically designed to do. Indeed, our focus in this case is not on the thief's potential ability to drive away in a stolen car as the majority contends, but on the thief's act of stealing the property of another. The legislature has specifically included a broad definition of "motor vehicle" in the criminal theft context in order to accomplish the ends or protecting individuals from having their personal property stolen.

The majority is correct that the Court of Appeals has erred to the extent that it has relied on, and continues to rely on, OCGA § 40-1-1 for the definition of "motor vehicle" in the context of criminal theft cases that have nothing to do with the regulatory framework of Title 40. However, the majority would continue this erroneous reliance on

---

[5] In this connection, it makes sense that, in the context of regulating motor vehicles and traffic, the legislature has made a distinction between vehicles that would generally be used on the road and "[s]pecial mobile equipment" that is "not designed or used primarily for the transportation of persons or property and only incidentally operated or moved over a highway." OCGA § 40-1-1 (59).

Title 40 by its own analysis (even though it reaches a different result than the Court of Appeals). Consistent with the Court of Appeals' conclusion, but contrary to the Court of Appeals' and the majority's analysis, the legislature has made clear that, in the context of criminal theft, a riding lawnmower is in fact a "motor vehicle." I would therefore affirm the judgment of the Court of Appeals, but only by following the clear intent of the legislature that both the majority and the Court of Appeals have ignored.

I am authorized to state that Justice Thompson and Justice Hines join in this dissent.

DECIDED NOVEMBER 23, 2009.

*Michael R. McCarthy*, for appellant.
*Kermit N. McManus, District Attorney, John S. Helton, Assistant District Attorney*, for appellee.