**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS***
***COURT. ALL FILINGS MUST BE SUBMITTED WITHIN***
***THE TIMES SET BY OUR COURT RULES.***

**October 20, 2020**

# In the Court of Appeals of Georgia

A20A0874. LANDELL v. THE STATE.                               DO-031 C

DOYLE, Presiding Judge.

Following a jury trial, Herbert George Landell was convicted of second-degree felony murder based on the death of his child due to his failure to provide adequate nutrition. He appeals from the denial of his motion for new trial, contending that (1) the evidence was insufficient to support the guilty verdict, and (2) the trial court erred by denying his request to charge the jury on involuntary manslaughter via reckless conduct.[1] For the reasons that follow, we agree and reverse Landell's conviction.

---

[1] This appeal was originally filed in the Supreme Court, but that Court transferred the case here because Landell was sentenced under OCGA § 16-5-1 (d), which carries a maximum sentence of 30 years as opposed to the maximum sentence of life imprisonment for ordinary felony murder. See, Ga. Const. of 1983, Art. VI, Sec. VI, Par. III (8); *Castro-Moran*, __ Ga. App. at __ n.2.

Because the evidence was sufficient to support a guilty finding, the State may elect to retry him.[2]

Construed in favor of the verdict,[3] the evidence shows that Landell was newly married to Lauren Fristed when she became pregnant.[4] Landell had strongly-held religious beliefs that led him to avoid seeking medical care, instead believing in the power of God to heal; Fristed shared his faith and accepted his distrust toward medicine. At Landell's urging, Fristed did not seek prenatal care — he told her, "we can just pray and things will work out." Fristed had seen doctors before she became married, but in light of her religious beliefs, she felt it was her duty to respect Landell's preferences.

Fristed carried the baby to full term, and when it became time for delivery, she endured three days of labor at home before going to the emergency room. Ultimately, due to prolonged labor pain and increasing health risk to the baby, Landell and Fristed agreed to let doctors sedate Fristed and deliver a baby girl by cesarean section.

---

[2] See *State v. Byrd*, 341 Ga. App. 421, 425 (2) (801 SE2d 99) (2017).

[3] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[4] The couple met on a Christian dating website and became married a little over two months after meeting online.

The child was born healthy on January 8, 2015, weighing seven pounds and four ounces.

About a month later, Fristed began having trouble producing enough breast milk to feed the baby. Fristed told Landell about the problem, and he replied, "we'll pray, and God will produce more milk to sustain." After the breastfeeding problems persisted, Landell advised Fristed, "for every three ounces that you produce, put an ounce or two of water in the milk." The couple noticed that the baby began losing weight, but Landell said she was just getting taller, not skinnier. Weeks later, the baby appeared ill and tired; Fristed and Landell talked about it, but Landell believed that the baby was being attacked by a demon and prayed that God would heal the baby. Throughout this time, the only sustenance they provided to the baby was the watered-down breast milk; they did not attempt to obtain formula.

A few more weeks passed, and Fristed grew gravely concerned one morning in March 2015 when the baby would not eat. Landell took the baby from Fristed and believed he could heal the baby through prayer, but a few hours later he reappeared and said, "we need to go to the hospital." They arrived at the emergency room, where medical staff discovered that the emaciated baby was dead. She weighed one pound two ounces less than her birth weight.

Based on these events, Landell and Fristed were charged with felony murder (four counts), first-degree cruelty to children, second-degree cruelty to children (two counts), and aggravated battery. Fristed entered a negotiated guilty plea to involuntary manslaughter, reckless conduct, and cruelty to children in the first degree. Landell went to trial, and a jury found him guilty of two counts of felony murder predicated on two counts of second-degree cruelty to children (one count for malnutrition and one count for failing to seek medical care). The trial court sentenced Landell on one count of felony murder predicated on second-degree cruelty to children (malnutrition) and merged the remaining counts. Following the denial of his motion for new trial, Landell now appeals.

1. Landell contends that the evidence was insufficient to support the guilty verdict, arguing that the evidence failed to show that he committed any acts manifesting criminal negligence causing cruel or excessive physical or mental pain. We disagree.

> When an appellate court reviews the sufficiency of the evidence,
>
> the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of

fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[5]

Landell was sentenced for second-degree murder under OCGA § 16-5-1 (d),[6] which provides: "A person commits the offense of murder in the second degree when, in the commission of cruelty to children in the second degree, he or she causes the death of another human being irrespective of malice." Under OCGA § 16-5-70 (c), a "person commits the offense of cruelty to children in the second degree when such

---

[5] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[6] Landell was found guilty of felony murder as indicted under OCGA § 16-5-1 (c) with the underlying felony being second-degree cruelty to children under OCGA § 16-5-70 (c) (causing a child cruel or excessive physical or mental pain through criminal negligence). At the sentencing hearing, the State argued that the rule of lenity would require the court to sentence him for second-degree murder under OCGA § 16-5-1 (d), which carries a maximum sentence of 30 years as opposed to the maximum sentence of life imprisonment for ordinary felony murder. See OCGA § 16-5-1 (e). The court agreed and sentenced Landell to 30 years with 20 to serve in confinement. See generally *Jones v. State*, 302 Ga. 488, 491 (1) (c) (807 SE2d 344) (2017) ("Effective July 1, 2014, the legislature amended OCGA § 16-5-1 to create the offense of murder in the second degree and to make the sentence for a death caused by cruelty to children in the second degree no less than ten years and no more than 30 years in length.").

5

person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain." "Criminal negligence is an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby."[7]

Here, the evidence shows that Landell failed to seek medical advice or care throughout the life of the baby. Further, he shared feeding responsibilities with his wife and failed to attempt to obtain formula or other adequate nourishment, instead relying on his personal beliefs that the baby would otherwise be provided for, despite growing evidence of the child's malnourishment such as sagging skin and protruding bones. There was testimony from hospital staff that the baby was extremely emaciated but showed no other sign of injury; the chief medical examiner testified that at her death she weighed half of the normal weight of a baby her age, and her death was the result of inadequate nourishment and medical care. This evidence authorized the jury to find that Landell unreasonably disregarded the risk to his child's health, which ultimately resulted in the child's death after being born healthy.[8] Despite Landell's testimony that he had no ill intent, the jury was entitled to weigh the evidence and

---

[7] OCGA § 16-2-1 (b).

[8] See *Shah v. State*, 300 Ga. 14, 18 (1) (c) (793 SE2d 81) (2016).

resolve any inconsistencies in witnesses testimony.[9] Accordingly, this enumeration presents no basis for reversal.

2. Landell also contends that the trial court erred by failing to give his written request to charge the jury on involuntary manslaughter based on misdemeanor reckless conduct as a lesser-included offense to felony murder based on cruelty to children. We agree.

> [A] written request to charge a lesser[-]included offense must always be given if there is any evidence that the defendant is guilty of the lesser[-] included offense. The evidence that the defendant committed the lesser offense does not need to be persuasive, but it must exist. A trial court is justified in refusing to charge on the lesser offense where there is no evidence that the defendant committed a lesser offense.[10]

---

[9] See *Jones v. State*, 302 Ga. 488, 491 (1) (b) (807 SE2d 344) (2017) ("A rational jury was authorized to reject appellant's defense that the victim's injuries were accidental and authorized to find that appellant . . . unreasonably failed to obtain medical treatment for the victim after the injuries occurred, thereby proximately causing her death."); *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.") (citation omitted). See also *Virger v. State*, 305 Ga. 281, 289 (3) (824 SE2d 346) (2019) ("[A]llowing [the child] to suffer rather than promptly seeking medical aid was a proximate cause of the child's death.").

[10] (Citations and punctuation omitted.) *Soto v. State*, 303 Ga. 517, 520 (2) (813 SE2d 343) (2018).

7

With respect to the requested charges,

A person commits the offense of involuntary manslaughter in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony. In this regard, a person may be found guilty of misdemeanor reckless conduct when he or she causes bodily harm to or endangers the bodily safety of another person by *consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.*[11]

This Court recently addressed a similar case, *Castro-Moran v. State*,[12] predicated on a failure to provide medical care, and we held that the trial court erred by denying a request to charge on involuntary manslaughter predicated on reckless conduct as a lesser-included offense in a felony murder charge.[13] In *Castro-Moran*, the defendant noticed signs of illness in her 17-month-old daughter.[14] Although she

---

[11] (Punctuation and citations omitted; emphasis supplied.) *Castro-Moran v. State*, __Ga. App. __ (1) (a) (845 SE2d 708).

[12] Id.

[13] See id. at *7 (1) (a).

[14] See id. at *1-*2.

8

sought medical care, she ultimately refused treatment at an emergency room due to financial concerns. Days later, the daughter died at home.[15] The defendant was charged with one count of felony murder and one count of first-degree cruelty to children.[16] The jury found her guilty of lesser-included offenses of second-degree felony murder and second-degree cruelty to children, and she was sentenced on the murder count with the cruelty count merging.[17] On appeal, the defendant challenged the trial court's refusal to give her requested charge on involuntary manslaughter based on reckless conduct as a lesser-included offense of felony murder. This Court found that the charge was required in light of evidence that the defendant's decision to refuse care could reflect "consciously disregarding a substantial and unjustifiable risk that her failure to seek medical treatment for [the child] would endanger her and lead to her death."[18]

Here, the evidence requires a similar conclusion. Landell testified that he loved his child and was merely following his religious faith by relying on prayer to resolve

---

[15] See id. at *1-*3.

[16] See id. at *3-*4.

[17] See id. at *4.

[18] Id. at *6 (1) (a).

9

his baby's feeding and health issues. When he told Fristed to add water to her breast milk, he explained that he thought, "it's just water, no harm can come from water[.] . . . I wanted to make sure that . . . the baby was full and make sure she was drinking good." According to Landell, he had a sincere if ultimately misguided belief that his child did not require medical intervention. This evidence warranted a charge on involuntary manslaughter based on reckless conduct because, as in *Castro-Moran*, a rational trier of fact could find that instead of criminal negligence, Landell displayed a conscious disregard of an unjustifiable and substantial risk of harm due to his failure to adequately feed his baby and seek medical care after she showed signs of malnutrition.[19]

Nevertheless, the State argues that such a conclusion ignores the legal analysis in *Drinkard v. Walker*,[20] which established the test for determining whether an offense is included in another for purposes of merger at sentencing.[21] Applying that test, the State contends that each offense at issue here — cruelty to children and reckless conduct — contains an element that the other does not, so the two offenses

---

[19] See id.

[20] 281 Ga. 211 (636 SE2d 530) (2006).

[21] See id. at 215-217.

are not included in one another. We need not address that argument because the State also concedes that the Supreme Court in *Shah v. State*[22] addressed a similar felony murder/cruelty to children conviction based on lack of feeding and care for a baby and reiterated "that reckless conduct may be a lesser[-]included offense of cruelty to children, if the harm to the child resulted from criminal negligence rather than malicious or willful conduct."[23] In *Shah*, the Supreme Court held that a lesser-included charge was required because of evidence supporting a finding of criminal negligence rather than malicious conduct.[24] Recognizing this, the State argues that

---

[22] 300 Ga. 14 (793 SE2d 81) (2016).

[23] (Punctuation omitted.) Id. at 18 (1) (c), quoting *Banta v. State*, 282 Ga. 392, 397 (651 SE2d 21) (2007). See also *Stepp-McCommons v. State*, __ Ga. __ (2) (c) (845 SE2d 643) (2020) ("[L]ike the lesser included offense of involuntary manslaughter, "[r]eckless conduct is an act of criminal negligence, rather than an intentional act, that causes bodily harm or endangers the bodily safety of another."") (punctuation omitted); *Brown v. State*, __Ga. App. __, ___ (4) (c) (Case No. A20A1358, decided Sept. 1, 2020), quoting *Shah*, 300 Ga. at 19 (2). .

[24] See *Shah*, 300 Ga. at 21-22 (2) (a), (b) (discussing defense theory of accident or negligence rather than intentionally or maliciously harming the child). We note that the cruelty to children charge in *Shah* was first degree, i.e. willful. See id. at 19 (2). Both first-degree and second-degree cruelty to children are felonies. See OCGA § 16-5-70 (e) (1), (2).

11

*Shah* should be overruled, but this Court lacks authority to do so.[25] Accordingly, in light of the evidence in this case as well as the precedent in *Shah* and sound reasoning in *Castro-Moran*, we conclude that the trial court erred by not instructing the jury on the lesser-included charge of involuntary manslaughter based on reckless conduct. Further, this error was not harmless because "[i]f a properly instructed jury concluded that [Landell] committed the misdemeanor of reckless conduct instead of the charged felony of cruelty to children based on deprivation [of food or medical care], the jury could not rationally conclude that [Landell] was guilty of felony murder predicated on the same alleged cruelty to children felony."[26]

---

[25] See Ga. Const. of 1983, Art. VI, Sec VI, Par. VI ("The decisions of the Supreme Court [of Georgia] shall bind all other courts as precedents."); *Moore v. State*, 327 Ga. App. 766, 767 (761 SE2d 158) (2014) (The Court of Appeals is "constitutionally bound by the decisions of the Supreme Court of Georgia and [has] no power to overrule or modify them.") (punctuation omitted).

[26] *Shah*, 300 Ga. at 23 (2) (b). Landell's conviction resulted from his lack of feeding (Counts 5 and 6), and a second set of counts (Counts 7 and 8) based on lack of medical care was merged. The reversal of Landell's conviction based on Counts 5 and 6 causes Counts 7 and 8 to "unmerge," but Counts 7 and 8 are based on the same conduct addressed herein and result in the same error. See *Harris v. State*, 286 Ga. 245, 253 (8) (686 SE2d 777) (2009) (holding that the defendant's conviction on one charge "unmerged" from a conviction that was reversed on appeal). We need not independently address Counts 7 and 8.

12

Although Landell's conviction is reversed based on the instructional error, the evidence was constitutionally sufficient to support the guilty verdict, so the State may elect to retry him.[27]

*Judgment reversed. McFadden, C. J., concurs. Hodges, J., dissents.*

---

[27] See *Shah*, 300 Ga. at 18-19 (1) (c), citing *State v. Caffee*, 291 Ga. 31, 34 (728 SE2d 171) (2012).

A20A0874. LANDELL v. THE STATE.                    DO-031C


HODGES, Judge, dissenting.

In my view, under the specific and unique circumstances of this case, the record can only support the singular conclusion that Landell made a conscious, intentional, and purposeful decision to forego medical care for his ailing infant daughter. In other words, Landell engaged in an "act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby," OCGA § 16-2-1 (b), rather than mere disregard of "a substantial and unjustifiable risk that his . . . act or omission will cause harm. . . ." OCGA § 16-5-60 (b). I therefore conclude that the trial court

correctly denied Landell's request for jury instructions on involuntary manslaughter and reckless conduct. Accordingly, I respectfully dissent.